***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gregory and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives or amend the Opinion and Award except regarding the payment of medical treatment and other minor modifications.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement and at the hearing as
STIPULATIONS
1. At the time of the accident, the parties were subject to and bound by the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between plaintiff and defendant-employer on December 4, 2000.
3. Defendant Sprint Corporation is self-insured, and Specialty Risk Services is the Third Party Administrator.
4. The average weekly wage applicable to this claim is $463.92, yielding a weekly compensation rate of $309.30.
5. This is an accepted case of compensability and defendants have paid all due temporary total disability benefits and medical expenses through the date of the hearing.
6. The deposition of Dr. Shepherd Rosenblum has been submitted and received into evidence.
 ***********
Based upon the evidence of record and any reasonable inferences drawn therefrom, the Full Commission makes the following
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was 42 years old with a date of birth of September 1, 1960. Plaintiff completed the eleventh grade and thereafter obtained a GED in 1979. Prior to her employment with defendant-employer, plaintiff worked as a teacher's aide, school bus monitor, and Bible school youth instructor.
2. On April 4, 1988, plaintiff began working for defendant-employer, then known as Carolina Telephone, in the Rocky Mount, North Carolina office. Plaintiff was one of approximately 150 directory assistance operators who received incoming four-one-one information calls. Plaintiff's job duties included assisting customers by taking incoming calls from businesses and residents, keying information into the computer, looking up information, and responding to callers' inquiries and requests.
3. Plaintiff sustained a compensable injury by accident to her back on March 24, 1993. Thereafter, plaintiff's treating physician imposed restrictions, but plaintiff was nevertheless able to continue her job in directory assistance with defendant-employer.
4. During the summer of 2000, plaintiff began experiencing pain, numbness and tingling in both hands. Following nerve conduction studies, on December 15, 2000, plaintiff was diagnosed with bilateral carpal tunnel syndrome by an orthopaedic surgeon, Dr. Shepherd Rosenblum.
5. Following Dr. Rosenblum's diagnosis, plaintiff filed a workers' compensation claim, which was accepted by defendants as compensable. Plaintiff has received compensation for all of her temporary total disability, which is ongoing, and defendants have paid for all related medical treatment. The only dispute concerns plaintiff's entitlement to permanent total disability benefits.
6. Dr. Rosenblum performed a carpal tunnel release of plaintiff's left hand on January 11, 2001, followed by a carpal tunnel release of her right hand on May 3, 2001. Plaintiff was released to return to light-duty work with defendant-employer following each surgery. However, although plaintiff worked for periods of time, she eventually went out of work completely on or about September 18, 2001.
7. In November 2001, Dr. Rosenblum provided plaintiff with a 10% permanent partial disability rating to each hand and imposed work restrictions that plaintiff not lift more than 10 pounds, not engage in any repetitive motion activities, and not push or pull with her hands. Dr. Rosenblum did not place restrictions on plaintiff's driving privileges or restrict her completely from seeking gainful employment. Defendant-employer was unable to accommodate these restrictions set forth by Dr. Rosenblum and as a result, on December 4, 2001, plaintiff was terminated and placed in a vocational rehabilitation program with Re-Employment Services.
8. During late 2001 and early 2002, plaintiff's vocational rehabilitation counselor at Re-Employment Services identified job leads for plaintiff to pursue. Plaintiff attended some, but not all, of the interviews scheduled by her counselor. Although plaintiff denies exhibiting any non-compliant behavior during the interviews, the stipulated documents contradict plaintiff's testimony and indicate that plaintiff advised potential employers that she required a certain rate of pay and discouraged employers from hiring her due to her hand condition which she stated could become the responsibility of the potential employer.
9. In addition to working with Re-Employment Services, plaintiff also conducted an individual job search on her own but plaintiff did not locate employment through these efforts. The primary reason plaintiff was not hired was that most of the employers she contacted were not hiring. Furthermore, although plaintiff contacted numerous employers, there is no evidence that any of the jobs she sought were not offered to her due to her hand condition or physical disability.
10. While plaintiff did participate to some extent in vocational rehabilitation, the greater weight of the evidence demonstrates that her efforts were not reasonably designed to locate suitable employment and she was not cooperative with the vocational rehabilitation provided by defendants through Re-Employment Services.
11. By September 2002, plaintiff began experiencing increased bilateral hand pain and numbness and returned to Dr. Rosenblum who obtained EMG studies on October 25, 2002. The studies revealed that plaintiff continued to experience carpal tunnel syndrome, left greater than right; however, her studies revealed improvement since the earlier surgeries. Nevertheless, plaintiff continued to experience pain and numbness, which eventually required additional surgery performed by Dr. Rosenblum on plaintiff's left hand on April 25, 2003, two months before the June 24, 2003 hearing. Thereafter, plaintiff also underwent a second carpal tunnel release to her right hand on July 25, 2003, one month following the hearing.
12. Following her most recent surgeries, plaintiff continued to treat with Dr. Rosenblum and plaintiff's bilateral hand pain and numbness appears to have gradually but continually improved. While Dr. Rosenblum is concerned that plaintiff's scar tissue will continue to cause her to experience some numbness, Dr. Rosenblum expects plaintiff's pain level to continue to improve in the future. Generally, Dr. Rosenblum expects continued improvement eight to ten months post-surgery. In fact, plaintiff is expected to reach maximum medical improvement eight to ten months after the July 2003 surgery. However, as Dr. Rosenblum was questioned regarding plaintiff's impairments, he nevertheless rated plaintiff's permanent partial impairment and increased her ratings to 20% for each hand, following the second round of surgeries.
13. Although plaintiff's condition may continue to improve, as of his deposition in September 2003, Dr. Rosenblum was of the opinion that plaintiff could work with restrictions of no lifting or carrying over three pounds and no repetitive use of her hands, including pushing, pulling, twisting and fine manipulation. Any testimony of Dr. Rosenblum that plaintiff is permanently and totally disabled is afforded little weight. Dr. Rosenblum confirmed from a medical standpoint plaintiff is capable of work with restrictions. Moreover, plaintiff has not yet reached maximum medical improvement or participated in job search activities following her most recent surgeries. Finally, Dr. Rosenblum's testimony regarding plaintiff's vocational prospects is outside his area of expertise and therefore afforded little weight.
14. Although at the time of the hearing plaintiff had not reached maximum medical improvement and was still under a doctor's care, in response to plaintiff's hearing request to be declared permanently and totally disabled, defendants obtained a labor market survey to demonstrate the types of jobs available in the marketplace within plaintiff's past restrictions and anticipated future restrictions. Accordingly, Dottie Davis, a certified vocational rehabilitation counselor who was familiar with plaintiff's geographic location and the vocational issues unique to carpal tunnel syndrome patients, conducted a labor market survey. Ms. Davis familiarized herself with plaintiff's condition and limitations and performed the survey which revealed five employment opportunities available to plaintiff at the time the survey was conducted, including front desk clerk positions at the Rocky Mount Courtyard by Marriott, Days Inn and Suites, and Holiday Inn, as well as a dispatcher position at United Cab Company and a retail sales position at Skilled Creations. In addition, several teacher's aide positions at local schools were identified as becoming available in the near future. Most of the identified positions had starting wages of $6.00-$8.00 per hour, but the potential pay growth of these positions over a reasonable period of time was unknown. While plaintiff's wages with defendant-employer were approximately $13.00 per hour, it is not unreasonable for vocational rehabilitation to seek suitable employment at lesser wages, as wages are only one factor to be considered when returning employees to suitable employment.
15. At the hearing, plaintiff was articulate, professional and neatly dressed. While plaintiff continues to experience difficulties with her hands, she is nevertheless able to use her hands regularly on a daily basis to feed herself, hold a pen and write on paper, and driving distances up to 30 or 40 miles. Plaintiff is also able to handle pieces of paper, turn pages, and move paper about so long as the movement is not repetitious over time and is consistent with Dr. Rosenblum's restrictions. Furthermore, plaintiff has used her personal computer for brief, non-repetitive periods since leaving defendant-employer. Plaintiff's testimony at the hearing that she is unable to perform tasks such as dressing herself, brushing her own hair or putting earrings in her ears is afforded little weight in light of the medical records and testimony, stipulated documents and her appearance and demeanor at the hearing.
16. Plaintiff continues to receive temporary total disability payments while recovering from her carpal tunnel release surgeries. Although plaintiff is expected to further improve and has not yet reached maximum medical improvement, she filed this hearing request asking to be declared permanently and totally disabled.
17. Plaintiff has a number of transferable skills, which would potentially enable her to work in a job within her restrictions. Furthermore, plaintiff did not fully cooperate with earlier efforts to obtain suitable employment.
18. According to vocational expert Ms. Davis, there are jobs available within plaintiff's restrictions, which are suitable for plaintiff taking into account her age, education, experience and restrictions. However, the issue of permanent and total disability is premature at this time as at the time of the June 24, 2003 hearing plaintiff was under a doctor's care and therefore not able to participate in a job search. As work restrictions have now been imposed and it is anticipated plaintiff will reach maximum medical improvement in the next several months, plaintiff is in need of additional vocational rehabilitation. Finally, it would not be futile for plaintiff to participate in a job search.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. On or around December 4, 2000, plaintiff sustained a compensable occupational disease in the course and scope of her employment with defendant-employer for which defendants have paid plaintiff temporary total disability benefits on a weekly basis and medical benefits. N.C. Gen. Stat. §§ 97-53, 97-29, and 97-25.
2. Plaintiff has not reached maximum medical improvement and a determination of permanent and total disability is premature. N.C. Gen. Stat. §§ 97-29, 97-30, 97-31; Effingham v. Kroger Co.,149 N.C. App. 105, 561 S.E.2d 287 (2002); Franklin v. BroyhillFurniture Indus., 123 N.C. App. 200, 472 S.E.2d 382, (1996).
3. Furthermore, assuming that plaintiff could in fact demonstrate that she has reached maximum medical improvement, she has nevertheless failed to prove that she is permanently and totally disabled or that it would be futile for plaintiff to engage in a job search in light of her medical restrictions, age, education and experience. Whitley v. Columbia Lumber Mfg. Co.,318 N.C. 89, 348 S.E.2d 336 (1986); Kennedy v. Duke Univ. Med.Ctr., 101 N.C. App. 24, 33, 398 S.E.2d 677, 682 (1990); Burwellv. Winn-Dixie Raleigh, Inc., 114 N.C. App. 69, 73-74,441 S.E.2d 145, 149 (1994).
4. Plaintiff is entitled to future medical treatment that may effect a cure, lessen her pain, or reduce her period of disability due to her compensable occupational disease. N.C. Gen. Stat. §§ 97-25, 25.1.
5. Plaintiff is entitled to have defendants provide vocational rehabilitation services to locate suitable employment considering all applicable factors and not limited specifically to employment at the same or greater wage. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings and conclusion, the Full Commission enters the following
 AWARD
1. Plaintiff's claim requesting a declaration of permanent and total disability and an award of related benefits must, under the law, be and is hereby DENIED.
2. Plaintiff shall cooperate with vocational rehabilitation provided by defendants designed to locate suitable employment.
3. Defendants shall continue to pay for any continuing medical treatment, including the treatment and recommendations of Dr. Rosenblum, so long as it tends to effect a cure or give relief.
4. Each side shall bear its own costs. Defendants shall pay the expert witness fee due Dr. Rosenblum, if not already paid pursuant to the prior order.
This the 30th day of June 2004.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER