JENNIFER J. EFFINGHAM, EMPLOYEE, PLAINTIFF v. THE KROGER COMPANY, EMPLOYER, CNA CONTINENTAL CASUALTY, CARRIER, DEFENDANTS

No. COA01-24

(Filed 5 March 2002)

## 1. Workers' Compensation— compensable injury—Commission is sole judge of credibility of witnesses

The Industrial Commission did not err in a workers' compensation case by finding and concluding that plaintiff grocery cashier's neck injury was not caused by her compensable back injury, because: (1) the Commission is the sole judge of the credibility of the witnesses; and (2) there is competent evidence in the record to support the Commission's finding that the history plaintiff provided to a doctor was not credible.

EFFINGHAM v. KROGER CO.

[149 N.C. App. 105 (2002)]

## 2. Workers' Compensation— benefits—temporary total disability

The Industrial Commission did not err in a workers' compensation case by awarding plaintiff grocery cashier temporary total disability benefits instead of permanent total disability benefits, because: (1) an employer's admission of compensability and liability through the use of a Form 60 does not create a presumption of continuing disability as does a Form 21 agreement; and (2) although defendants presented evidence that a "greeter" job was available to plaintiff which met the restrictions placed on plaintiff for return to work and paid plaintiff the same wages she had earned prior to her back injury, defendants did not establish that the position offered to plaintiff is an accurate measure of plaintiff's ability to earn wages in the competitive job market and there is no evidence that other employers would hire plaintiff to do a similar job at a comparable wage.

## 3. Workers' Compensation— permanent disability—proof of loss of wage-earning capacity

The Industrial Commission erred in a workers' compensation case by failing to determine whether plaintiff grocery cashier proved her loss of wage-earning capacity was permanent when she elected to seek permanent disability benefits under N.C.G.S. § 97-29 after reaching maximum medical improvement.

## 4. Workers' Compensation— late payment penalty—payment of benefits during employee's attempt to return to work

The Industrial Commission did not err in a workers' compensation case by failing to find and conclude that plaintiff grocery cashier was entitled to a ten percent late payment penalty under N.C.G.S. § 97-18(g) based on defendants' failure to pay plaintiff temporary partial disability benefits during her attempt to return to work, because the record and award of the Commission supports the conclusion that defendants paid plaintiff all temporary partial disability benefits owed.

## 5. Workers' Compensation— attorney fees—unreasonable denial and defense of claim

The Industrial Commission did not abuse its discretion in a workers' compensation case by failing to award plaintiff grocery cashier her attorney fees under N.C.G.S. § 97-88.1 for defendants' alleged unreasonable denial and defense of this claim regarding plaintiff's retained wage-earning capacity based

on plaintiff's return to work in a greeter position, because the parties brought, prosecuted, or defended this matter with reasonable grounds based on the facts that: (1) the Commission found the greeter position offered to plaintiff employee by defendant employer in the present case was an actual job not created especially for plaintiff, and the position was advertised by the company before plaintiff was placed in that position; and (2) while the position was modified by giving plaintiff a chair so that she could change positions from standing to sitting as needed, it was not so highly modified to make it one that never existed before or one that no one but plaintiff would be hired to fill that position.

6. **Workers' Compensation— partial disability—denial of credit for payment**

The Industrial Commission did not abuse its discretion in a workers' compensation case by failing to allow defendants a credit for payment to plaintiff grocery cashier of partial disability associated with plaintiff's neck injury, because defendants have not been ordered to pay compensation for plaintiff's neck problems since the Commission held that plaintiff's neck problems and herniated cervical disc were not caused by her compensable back injury.

7. **Workers' Compensation— medical expenses—statutory limitations**

The Industrial Commission's award of medical expenses for plaintiff grocery cashier's compensable back injury in a workers' compensation case is remanded to the Commission to incorporate the statutory limitations under N.C.G.S. §§ 97-25.1 and 97-2(19).

Judge HUDSON concurring in a separate opinion.

Appeals by plaintiff and defendants from Opinion and Award entered 22 August 2000 by the North Carolina Industrial Commission. Heard in the Court of Appeals 5 December 2001.

*Law Offices of George W. Lennon, by George W. Lennon and Michael W. Ballance, for plaintiff.*

*Young, Moore and Henderson, P.A., by Joe E. Austin, Jr. and Dawn M. Dillon, for defendants.*

EFFINGHAM v. KROGER CO.

[149 N.C. App. 105 (2002)]

TYSON, Judge.

Jennifer J. Effingham ("plaintiff") appeals the denial of her claim for permanent total disability by the North Carolina Industrial Commission ("Commission"). Defendants, The Kroger Company ("defendant-employer") and CNA Continental Casualty ("defendant-carrier"), appeal an award of temporary total disability by the Commission. We affirm in part and reverse in part.

## I. Facts

Plaintiff filed a motion for payment of past due workers' compensation benefits, ten percent penalty pursuant to N.C.G.S. § 97-18, and attorney's fees pursuant to N.C.G.S. § 97-88.1 in her Form 33, Request for Hearing, on 5 February 1998. Defendants filed a response to plaintiff's motions on 17 February 1998.

The Commission unanimously made the following findings of fact: Plaintiff began working for defendant-employer as a cashier in May 1995. Plaintiff's job duties included lifting and scanning grocery items.

While at work on 18 December 1995, plaintiff felt a pain in her lower back, after she lifted a bag of cat liter from the bottom of the shopping cart and onto the scanner. Plaintiff's injury was accepted as compensable by defendants pursuant to a Form 60, Employer's Admission of Employee's Right to Compensation, filed 14 February 1996.

Plaintiff had surgery on 24 January 1996. Dr. Fulghum removed two large disc fragments at L4-5. On 30 July 1996, Dr. Derian performed a decompression at plaintiff's L4-5.

The Commission found that plaintiff had degenerative disc disease, prior to her accident, and that the compensable injury on 18 December 1995 significantly aggravated her back condition, resulting in a herniated disc at L4-5. The surgeries performed by Dr. Fulghum and Dr. Derian were reasonably necessary to treat plaintiff's back injury and provide her relief from pain.

As a result of her injury, plaintiff has a condition known as failed low back syndrome. The Commission found that plaintiff will need ongoing treatment, including medication, to manage her pain. The Commission also found that because of her back pain, plaintiff is not capable of working full-time and that plaintiff is unable to compete for part-time jobs available for unskilled workers.

**EFFINGHAM v. KROGER CO.**

[149 N.C. App. 105 (2002)]

The Commission further found that plaintiff's neck problems and herniated cervical disc were not caused by her compensable injury and that the treatment and neck surgery by Dr. Haglund on 12 October 1997 were not compensable.

The Commission concluded that plaintiff is entitled to temporary total disability benefits at the rate of $229.34 per week, beginning 27 January 1997 and continuing until further order. Defendants are entitled to offset wages paid to plaintiff while employed. Plaintiff and defendants appeal.

## II. Issues

The issues presented by plaintiff are whether: (1) the Commission erred by finding and concluding that plaintiff's herniated cervical disc was not caused by her compensable injury, (2) the Commission erred by failing to award plaintiff permanent and total disability benefits, (3) the Commission erred by failing to find and conclude that plaintiff was entitled to a late payment penalty, and (4) the Commission erred by failing to award plaintiff her attorney's fees for defendants' unreasonable denial and defense of this claim.

The issues presented by defendants are whether: (1) the Commission erred in awarding plaintiff temporary total disability benefits, (2) the Commission erred by failing to allow defendants a credit for payment of partial disability, and (3) the Commission erred by failing to tailor the award of medical expenses in conformity with the Workers' Compensation Act. Those assignments of error relating to the findings of facts and conclusions of law that are not argued are deemed abandoned. N.C.R. App. R. 28(b)(5) (1999).

## III. Standard of Review

This Court's review is limited to a determination of (1) whether the Commission's findings of fact are supported by competent evidence, and (2) whether the Commissioner's conclusions of law are supported by the findings of fact. *Hendrix v. Linn-Corriher Corp.*, 317 N.C. 179, 186, 345 S.E.2d 374, 379 (1986). The Commission's findings of fact are conclusive on appeal if supported by competent evidence, even where there is evidence to support contrary findings. *Id.* The Commission's conclusions of law, however, are reviewable *de novo* by this Court. *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 684 (1982). The Commission is the sole judge of the credibility of the witnesses and the weight accorded to their testi-

mony. *Anderson v. Northwestern Motor Co.*, 233 N.C. 372, 376, 64 S.E.2d 265, 268 (1951).

### IV. Plaintiff's Appeal

### A. Herniated cervical disc not compensable

[1] Plaintiff argues the Commission's findings, that her herniated cervical disc was not caused by her compensable accident, are contrary to the undisputed evidence and other findings of fact. We disagree.

On 14 February 1997, plaintiff contacted Dr. Blackburn with a burning sensation in her upper back. Dr. Blackburn prescribed muscle relaxants. Plaintiff then sought treatment from Dr. Esposito, an orthopaedic surgeon, with complaints of neck pain on 1 May 1997.

In July 1997, Dr. Esposito diagnosed plaintiff with a herniated disc at C5-6. Dr. Esposito referred plaintiff to Duke University Medical Center for further treatment. Plaintiff was examined by Dr. Haglund on 6 October 1997, at Duke. Plaintiff reported to Dr. Haglund a history of neck pain that was continuous from the date of her compensable injury. Dr. Haglund performed an anterior cervical discectomy and fusion on 12 October 1997.

Plaintiff was not treated for neck pain by her prior doctors, Fulghum and Derian, and did not report any neck pain to either until her last visits. Dr. Esposito did not treat plaintiff until eighteen months after her injury. Plaintiff told Dr. Esposito that her neck pain had developed over the last couple of months.

Dr. Haglund opined that plaintiff's herniated cervical disc was caused or aggravated by her injury on 18 December 1995. The Commission determined that Dr. Haglund relied on the medical history provided by plaintiff which was inconsistent, unsupported by medical documentation, and not credible. The Commission concluded that: (1) plaintiff's neck problems and herniated cervical disc were not caused by her compensable injury and (2) the treatment and neck surgery by Dr. Haglund were not compensable.

We hold that there is competent evidence in the record to support the Commission's finding that the history plaintiff provided to Dr. Haglund was not credible. The Commission is the sole judge of the credibility of the witnesses and it rejected plaintiff's evidence that her neck problems resulted from her back injury. *See Anderson*, 233 N.C. at 376, 64 S.E.2d at 268. This assignment of error is overruled.

## B.  Disability Award

The Workers' Compensation Act ("the Act") defines "disability" as the "incapacity because of injury to earn the wages which the employee was receiving at the time of the injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (1999). "Compensation must be based upon loss of wage-earning power rather than the amount actually received." *Hill* v. *DuBose*, 234 N.C. 446, 447-48, 67 S.E.2d 371, 372 (1951). If the employee has the capacity to earn some wages, but less than she was earning at the time of injury, she is entitled to partial disability benefits under N.C.G.S. § 97-30. *Gupton v. Builders Transp.*, 320 N.C. 38, 42, 357 S.E.2d 674, 678 (1987). If the employee's earning capacity has been "totally obliterated," she is entitled to total disability benefits under N.C.G.S. § 97-29. *Id.*

[2] Plaintiff contends the Commission erred in denying her <u>permanent</u> total disability benefits. The Commission awarded plaintiff <u>temporary</u> total disability at the rate of $229.34 per week, beginning 27 January 1997 and continuing until further order of the Commission. Defendants appeal the Commission's award of temporary total disability and argue that the Commission erred in concluding that plaintiff did not have wage earning capacity.

## 1.  Burden of Proof

"In order to obtain compensation under the Workers' Compensation Act, the claimant has the burden of proving the existence of his disability and its extent." *Hendrix*, 317 N.C. at 185, 345 S.E.2d at 378. To support a conclusion of disability, the plaintiff must prove and the Commission must find that: (1) plaintiff was incapable after her injury of earning the same wages earned prior to injury in the same employment, (2) plaintiff was incapable after her injury of earning the same wages she earned prior to injury in any other employment, and (3) plaintiff's incapacity to earn wages was caused by her compensable injury. *Hilliard*, 305 N.C. at 595, 290 S.E.2d at 683. After these elements are proven, "the burden shifts to [the employer] to show that plaintiff is employable." *Dalton v. Anvil Knitwear*, 119 N.C. App. 275, 284, 458 S.E.2d 251, 257 (1995).

One method for establishing disability is the use and approval of a Form 21 agreement, which entitles employees to a presumption of disability. *Kisiah v. W.R. Kisiah Plumbing, Inc.*, 124 N.C. App. 72, 476 S.E.2d 434 (1996). N.C.G.S. § 97-18(b) permits an employer to admit that the injury suffered by the employee is compensable, that

the employer is liable for compensation, and to notify the Commission of such action by use of a Form 60. *Sims v. Charmes/Arby's Roast Beef,* 142 N.C. App. 154, 159, 542 S.E.2d 277, 281 (2001).

Admitting compensability and liability, through the use of a Form 60, does not create a presumption of continuing disability as does a Form 21 agreement. *Id.* at 159-60, 542 S.E.2d at 281-82. The Form 60 in the present case does not entitle plaintiff to a presumption of continuing disability. Therefore, the burden of proving disability is on plaintiff.

Here, Dr. Fulghum testified that plaintiff suffers from chronic back pain and was temporarily totally disabled from full-time competitive employment as of the last time he saw her in April 1996. Dr. Derian testified that plaintiff suffers from chronic back pain, is disabled from full-time competitive employment, and that she is permanently disabled. Dr. Haglund testified that plaintiff suffers from chronic back pain and is permanently and totally disabled from sustaining any full-time or part-time competitive employment. Dr. Blackburn testified that plaintiff is permanently and totally disabled from full-time work. David Arthur, vocational rehabilitation counselor, testified that plaintiff is permanently and totally disabled from full-time competitive employment while she suffers from chronic back pain.

Defendants contend that plaintiff is capable of earning wages. To rebut evidence of disability, defendants must show "not only that suitable jobs are available, but also that the plaintiff is capable of getting one, taking into account both physical and vocational limitations." *Kennedy v. Duke Univ. Med. Ctr.,* 101 N.C. App. 24, 33, 398 S.E.2d 677, 682 (1990). "An employee is 'capable of getting' a job if 'there exists a reasonable likelihood . . . that he would be hired if he diligently sought the job.' " *Burwell v. Winn-Dixie Raleigh, Inc.,* 114 N.C. App. 69, 73-4, 441 S.E.2d 145, 149 (1994) (quoting *Trans-State Dredging v. Benefits Review Bd.,* 731 F.2d 199, 201 (4th Cir. 1984)).

In this case, defendants presented evidence that a "greeter" job was available to plaintiff which met the restrictions placed on plaintiff for return to work, and paid plaintiff the same wages she had earned prior to her back injury.

In *Peoples v. Cone Mills Corp.,* 316 N.C. 426, 342 S.E.2d 798, (1986), our Supreme Court stated:

If the proffered employment does not accurately reflect the person's ability to compete with others for wages, it cannot be considered evidence of earning capacity. Proffered employment would not accurately reflect earning capacity if other employers would not hire the employee with the employee's limitations at a comparable wage level.

*Id.* at 438, 342 S.E.2d at 806.

Defendants did not establish that the greeter position offered to plaintiff is an accurate measure of plaintiff's ability to earn wages in the competitive job market. There is no evidence that other employers would hire plaintiff to do a similar job at a comparable wage. We hold that there is sufficient evidence to support the Commission's findings that plaintiff is temporarily totally disabled as defined by the Act, as of the date of hearing.

### 2. Temporary vs. Permanent Disability Benefits

Plaintiff filed a Form 33, Request for Hearing, asking the Commission to find that she was entitled to benefits for "total and permanent disability" under N.C.G.S. § 97-29. In order to prove her entitlement to "total and permanent disability," plaintiff sought a determination that the "greeter" job did not reflect her actual wage-earning capacity. Alternatively, defendants sought a determination that plaintiff retained wage-earning capacity in the "greeter" job and was only entitled to "partial permanent disability" under N.C.G.S. § 97-30.

The Commission made no findings as to whether plaintiff's loss of wage-earning capacity was permanent. The Commission did conclude that the "greeter" position did not indicate that plaintiff is presently able to compete with others for wages. We have already held that this conclusion of law was supported by the findings of fact which in turn were supported by competent evidence. *See Hendrix,* 317 N.C. at 186, 345 S.E.2d at 379.

The Workers' Compensation Act provides two basic categories of benefits as the result of an injury by accident: (1) indemnity benefits for loss of wage-earning capacity under N.C.G.S. § 97-29 (total incapacity) or N.C.G.S. § 97-30 (partial incapacity) and (2) benefits for physical impairment, without regard to its effect on wage-earning capacity, under N.C.G.S. § 97-31 (schedule of injuries). N.C.G.S. §§ 97-29 and 97-30 are alternate sources of compensation for an employee who suffers an injury which is also included under the

schedule of injuries found in N.C.G.S. § 97-31. *Harrington v. Pait Logging Co./Georgia Pac.*, 86 N.C. App. 77, 80, 356 S.E.2d 365, 366 (1987). The employee is allowed to select the more favorable remedy. *Whitley v. Columbia Lumber Mfg. Co.*, 318 N.C. 89, 90, 348 S.E.2d 336, 340 (1986). The employee cannot recover compensation under both sections, because 97-31 is "in lieu of all other compensation." *Harrington*, 86 N.C. App. at 80, 356 S.E.2d at 366-67.

**[3]** Plaintiff argues that she is entitled to "total and permanent" disability benefits under N.C.G.S. § 97-29 after reaching maximum medical improvement. Plaintiff cites *Franklin v. Broyhill Furniture Indus.*, 123 N.C. App. 200, 204-05, 472 S.E.2d 382, 385 (1996), for the proposition that once an employee reaches maximum medical improvement she may seek to establish permanent incapacity.

Maximum medical improvement has been held to be "the prerequisite to determination of the amount of permanent disability for purposes of G.S. 97-31," *see Brown v. S & N Communications, Inc.*, 124 N.C. App. 320, 330, 477 S.E.2d 197, 203 (1996) (citation omitted), or the end of the "healing period," *see Neal v. Carolina Management,* 350 N.C. 63, 510 S.E.2d 375 (1999) (adopting dissenting opinion of Timmons-Goodson, J.); *Franklin*, 123 N.C. App. at 204-05, 472 S.E.2d at 385.

We have held that "temporary disability" is payable only "during the healing period" under N.C.G.S. § 97-31. *Carpenter v. Industrial Piping Co.*, 73 N.C. App. 309, 311, 326 S.E.2d 328, 329-30 (1985). This Court in *Anderson v. Gulistan Carpet, Inc.*, 144 N.C. App. 661, 670, 550 S.E.2d 237, 243-44 (2001) (citing *Franklin*, 123 N.C. App. at 204-05, 472 S.E.2d at 385), implied that "temporary disability" benefits for loss of wage-earning capacity under N.C.G.S. §§ 97-29 or 97-30 are only payable before the employee has reached maximum medical improvement. In light of the Workers' Compensation Act, the case law prior to *Franklin*, and the cases cited by *Franklin*, we interpret *Franklin* to hold that an employee may seek a determination of her entitlement to permanent disability under N.C.G.S. §§ 97-29, 97-30, or 97-31, only after reaching maximum medical improvement. We hold that maximum medical improvement is the initial point at which either party can seek a determination of permanent loss of wage-earning capacity.

Temporary disability benefits are for a limited period of time. *See* Leonard T. Jernigan, Jr., *North Carolina Workers' Compensation Law and Practice*, § 12-1 at 89 (3d ed. 1999). "There is a presumption

EFFINGHAM v. KROGER CO.

[149 N.C. App. 105 (2002)]

that [the employee] will eventually recover and return to work." *Id.* Therefore, the employee must make reasonable efforts to go back to work or obtain other employment.

In determining an employee's loss of wage-earning capacity, the Commission must determine whether the employee has made reasonable efforts to seek and obtain employment, whether there is a reasonable probability that with training and education the employee can achieve suitable employment, and whether it is in the best interest of the employee to undertake such training and education. Additionally, the Commission must take into account the physical impairment from the injury, as well as the age, education, job skills, and other physical limitations of the worker, plus other vocational factors, such as the availability of jobs within the worker's limitations. *Hillard*, 305 N.C. at 596, 290 S.E.2d at 684.

Here, the plaintiff exercised her election to seek permanent disability benefits after reaching maximum medical improvement. The Commission failed to determine whether plaintiff proved her loss of wage-earning capacity was permanent. We remand to the Commission for a hearing to determine plaintiff's alleged permanent disability, if any, consistent with this opinion. Either party may offer additional evidence to support their claims or defenses.

### C. Late Payment Penalty

[4] Plaintiff argues that she is due a 10% penalty under N.C. Gen. Stat. § 97-18(g) (1999), which provides that "[i]f any installment of compensation is not paid within 14 days after it becomes due, there shall be added to such unpaid installment an amount equal to ten per centum (10%) thereof . . . ." Plaintiff contends that defendants owed her temporary partial disability benefits during her attempt to return to work and failed to pay them.

In January 1997, plaintiff attempted a trial return to work, part-time for defendant-employer in the greeter position, as approved by Dr. Derian. Defendant-employer filed a Form 28T to terminate plaintiff's temporary total disability benefits pursuant to N.C.G.S. § 97-18.1(b). During the trial return to work, plaintiff was entitled to temporary partial disability benefits pursuant to N.C.G.S. § 97-30 which provides in pertinent part:

> where the incapacity for work resulting from the injury is partial, the employer shall pay, or cause to be paid, as hereinafter provided, to the injured employee during such disability, a weekly

compensation equal to sixty-six and two-thirds percent (66 2/3%) of the difference between his *average* weekly wages before the injury and the *average* weekly wages which he is able to earn thereafter, but not more than the amount established annually to be effective October 1 as provided in G.S. 97-29 a week, and in no case shall the period covered by such compensation be greater than 300 weeks from the date of injury.

N.C. Gen. Stat. § 97-30 (1999) (emphasis added).

The record shows that plaintiff's average weekly wage before injury was $344.00 and that plaintiff's average weekly wage, which she earned based on the approved twenty hours per week, was $172.00. Defendants contend that they paid all of the temporary partial disability due to plaintiff. Plaintiff concedes that defendants paid plaintiff $114.67 per week in addition to the hours she actually worked each week.

Although the Commission failed to enter any specific findings regarding the payment of temporary partial disability, the Commission awarded plaintiff temporary total disability beginning 27 January 1997 and concluded that defendants were entitled to offset for wages paid. *See Carothers v. Ti-Caro,* 83 N.C. App. 301, 306, 350 S.E.2d 95, 98 (1986) (an injured employee cannot be simultaneously totally and partially disabled); *Smith v. American and Efird Mills,* 51 N.C. App. 480, 490, 277 S.E.2d 83, 89-90 (1981) (stacking of total benefits on top of partial benefits, for the same period, is not authorized by the Act), *modified on other grounds and aff'd,* 305 N.C. 507, 290 S.E.2d 634 (1982).

The record and award of the Commission supports our conclusion that defendants paid plaintiff all temporary partial disability benefits owed. Plaintiff is not entitled to a late payment penalty pursuant to N.C.G.S. § 97-18(g).

### D. Unreasonable Defense

[5] Plaintiff also contends she is due attorney's fees under N.C.G.S. § 97-88.1 for defendant's unreasonable defense of this claim. Under N.C.G.S. § 97-88.1, the Commission may award attorney's fees if it determines that "any hearing has been brought, prosecuted, or defended without reasonable ground." N.C. Gen. Stat. § 97-88.1 (1999). The purpose behind this section is to prevent "stubborn, unfounded litigiousness which is inharmonious with the primary purpose of the Workers' Compensation Act to provide compensation to

injured employees." *Beam v. Floyd's Creek Baptist Church*, 99 N.C. App. 767, 768, 394 S.E.2d 191, 192 (1990) (citations omitted). The Commission, therefore, may assess the whole costs of litigation, including attorney fees, against any party who prosecutes or defends a hearing without reasonable grounds. *Troutman v. White & Simpson, Inc.*, 121 N.C. App. 48, 54, 464 S.E.2d 481, 485 (1995).

"The decision of whether to make such an award, and the amount of the award, is in the discretion of the Commission, and its award or denial of an award will not be disturbed absent an abuse of discretion." *Id.* at 54-55, 464 S.E.2d at 486 (citations omitted). An abuse of discretion results only where a decision is "manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Long v. Harris*, 137 N.C. App. 461, 464-65, 528 S.E.2d 633, 635 (2000) (citation omitted).

Defendants argued before the Commission and on appeal that plaintiff retained wage-earning capacity, entitling her only to partial disability and not total disability benefits. Plaintiff contends that defendants' argument is premised on the greeter position. Plaintiff argues that the greeter position was a highly modified job not available in the competitive job market or "make-work." We disagree.

On 27 January 1997, plaintiff was released from Dr. Derian's care. Dr. Derian opined that plaintiff was capable of performing part-time work with the following restrictions: no lifting greater than ten pounds; no repetitive or prolonged bending; lifting, or stooping; and frequent changes from sitting and standing to walking. Plaintiff subsequently attempted a trial return to work, part-time for defendant-employer as a greeter. The Commission found that:

> [t]he greeter position is an *actual* job that exists in some of defendant-employer's stores, but before plaintiff was offered the position, a greeter was not used at the store where plaintiff worked. The greeter position had been modified to fit plaintiff's work restrictions. Plaintiff was given a chair and was allowed frequent breaks. The position was scheduled for twenty hours per week, but due to chronic back pain, plaintiff averaged only 14.84 hours per week.

(Emphasis added).

Plaintiff relies on *Peoples* and *Saums* to support her contention that this was not a reasonable basis upon which to defend the claim. We find this case to be distinguishable from *Peoples* and *Saums*.

In *Saums v. Raleigh Community Hospital*, 346 N.C. 760, 487 S.E.2d 746 (1997), plaintiff-employee was working as a housekeeper prior to her back injury. A new position, quality control clerk, was created for plaintiff-employee's return to the work place by defendant-employer. *Id.* at 761, 487 S.E.2d at 748. Similarly, in *Peoples*, 316 N.C. 426, 342 S.E.2d 798, plaintiff-employee worked in the card room prior to his pulmonary disease. Defendant-employer highly modified an existing third shift supply room position for plaintiff-employee's return to work. *Id.* at 428-29, 342 S.E.2d at 801. The personnel manager testified that: (1) a job such as the one offered to plaintiff never existed before, (2) it was created especially for plaintiff with his physical limitations in mind, and (3) no other person other than plaintiff would be hired to work in that position at the wages he was offered. *Id.* at 429-30, 342 S.E.2d at 801.

Here, the Commission found that the greeter position in the present case was an actual job, not created especially for plaintiff. While the position was modified, to the extent that defendants gave plaintiff a chair so that she could change positions from standing to sitting as needed, it was not so highly modified as the position in *Peoples* to make it one that never existed before or one that no one but plaintiff would be hired to fill that position. In fact, the store manager, Janet Novak, testified that the greeter position was advertised before plaintiff was placed in that position and that if profits allowed, she would again fill the greeter position if a qualified person came along.

We find this case to be distinguishable from *Saums* and *Peoples*, and conclude that the parties "brought, prosecuted, or defended" this matter with reasonable grounds. We hold that an award of attorney's fees is not warranted pursuant to N.C.G.S. § 97-88.1.

### V. Defendants' Appeal

We have already addressed defendants' argument regarding the disability award in section IV, B of this opinion.

### A. Credit for Partial Disability Benefits

[6] Plaintiff received $400.00 in private disability benefits under a plan funded by defendants in December 1997 for problems associated with her neck. Defendants contend that the Commission erred in concluding that defendants are not entitled to a credit. We disagree.

This Court has held that N.C.G.S. § 97-42 is the only statutory authority for allowing an employer in North Carolina any credit against workers' compensation payments due an injured employee. *Johnson v. IBM, Inc.*, 97 N.C. App. 493, 494-95, 389 S.E.2d 121, 122 (1990). N.C.G.S. § 97-42 provides:

> Payments made by the employer to the injured employee during the period of his disability . . . which by the terms of this Article were not due and payable when made, may, subject to the approval of the Commission be deducted from the amount to be paid as compensation.

N.C. Gen. Stat. § 97-42 (1999). The rationale behind the statute is to encourage voluntary payments by the employer during the time of the worker's disability. *See Gray v. Carolina Freight Carriers, Inc.*, 105 N.C. App. 480, 484, 414 S.E.2d 102, 104 (1992). The decision of whether to grant a credit is within the sound discretion of the Commission. *Moretz v. Richards & Associates, Inc.*, 74 N.C. App. 72, 75, 327 S.E.2d 290, 293 (1985), *aff'd as modified*, 316 N.C. 539, 342 S.E.2d 844 (1986). Such decision to grant or deny a credit will not be disturbed on appeal in the absence of an abuse of discretion. *Id.*

At bar, the Commission held that plaintiff's neck problems and herniated cervical disc were not caused by her compensable back injury. We affirm this conclusion. Since defendants have not been ordered to pay compensation for plaintiff's neck problems, we conclude the Commission did not abuse its discretion by denying defendants a credit for this payment.

## B. Award of Medical Expenses

[7] Defendants final argument is that the award by the Commission that defendants pay all reasonably necessary medical expenses incurred or to be incurred as a result of plaintiff's compensable back injury is overly broad. Defendants contend that the award should be subject to the limitations of N.C.G.S §§ 97-25.1 (two-year statute of limitations) and 97-2(19) (definition of medical compensation).

The Commission incorporated these limitations in its Conclusion of Law No. 3. We believe that the Commission also intended to incorporate these limitations into the award of medical expenses. Since we have remanded to the Commission for a determination of permanent disability, we also remand to the Commission to incorporate these statutory limitations into the award.

Affirmed in part, reversed in part and remanded.

Judge TIMMONS-GOODSON concurs.

Judge HUDSON concurs with separate opinion.

HUDSON, Judge, concurring.

While I agree with the majority in almost every respect, I write separately to clarify one point pertaining to the issue of attorneys fees under N.C.G.S. § 97-88.1 (Issue IV.D). As to this issue, the majority states that the Commission has not abused its discretion in declining to award such fees, because the defendants did not "defend without reasonable grounds." With this conclusion, I agree. However, I believe that the basis for this conclusion is that the defendant presented sufficient evidence to create a dispute as to whether the plaintiff's greeter job accurately reflected her wage earning capacity. As such, the Commission was justified in declining to award attorneys fees.

The plaintiff presented evidence that the job was highly modified, and that, even so, because of her irregular attendance due to chronic pain, she could not hold the job. The Commission found, and we have affirmed, based on *Peoples*, 316 N.C. 426, 342 S.E.2d 798, the following:

> [the modified greeter position] was scheduled for twenty hours per week, but due to chronic back pain, plaintiff was unable to perform the job for the full twenty hours . . . [but] on average, plaintiff worked only 14.84 hours per week. . . . Plaintiff's irregular attendance would not be tolerated by most employers. Under the totality of the circumstances, the greeter position performed by plaintiff was not indicative of plaintiff's ability to compete with others for wages.

I believe that *Peoples*, 316 N.C. at 428, 342 S.E.2d at 806, and *Saums*, 346 N.C. 760, 487 S.E.2d 746, bear on whether or not the greeter job reflects plaintiff's wage earning capacity, and do not resolve the issue of attorneys fees. Despite the above finding, there were significant disputes in the evidence. Therefore, the Commission's conclusion to award no attorneys fees was justified. Having made this clarification, I concur.