***********
Upon review of the competent evidence of record, with reference to the errors assigned, and considering the briefs and oral arguments of the parties, the Full Commission finds no good grounds to receive further evidence, or to rehear the parties or their representatives. Upon reconsideration of the evidence, the Full Commission affirms, with minor modifications, the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter.
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. All parties have been properly designated, and there is no question as to joinder or non-joinder of the parties.
4. Insurance coverage existed on the date of injury.
5. Plaintiff alleges to have sustained a compensable injury on February 29, 2008.
6. An employment relationship existed between plaintiff and defendant-employer during some or all of the time period of the previous paragraph.
7. Plaintiff's average weekly wage was $360.00, with a compensation rate of $240.01.
8. Plaintiff's claim was accepted on a Form 63, and plaintiff has been and continues to be paid compensation under N.C. Gen. Stat. § 97-29, at a rate of $240.01 per week.
9. At the hearing before the Deputy Commissioner, plaintiff testified through the assistance of a Spanish language interpreter, Ms. Mariana Ortega. The parties stipulated to the qualifications of Ms. Ortega as an interpreter, pursuant to Rule 616 of the Workers' Compensation Rules of the North Carolina Industrial Commission.
10. The parties stipulated to the admissibility of the following documents, which were received into evidence:
 a. Exhibit 1: Pre-Trial Agreement;
 b. Exhibit 2: Plaintiff's Medical Records (pages 1-72); and
 c. Exhibit 3: Industrial Commission Form and Filings (pages 1-122). *Page 3 
11. Plaintiff's issues for determination by the North Carolina Industrial Commission are as follows:
 a. Whether plaintiff is entitled to a change of treating physicians to one of his own choosing.
 b. Whether defendants have denied plaintiff's second opinion evaluation in bad faith.
12. Defendants' issues for determination by the North Carolina Industrial Commission are as follows:
 a. Whether plaintiff has any disability as a result of his compensable injury from February 18, 2009 to the present and going forward.
 b. What benefits, if any, is plaintiff entitled to receive?
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 27 years old, with a date of birth of September 15, 1982. Plaintiff had completed elementary school and his work training was from on-the-job experience. Spanish is plaintiff's native and primary language and he testified through the assistance of an interpreter.
2. Prior to working for defendant-employer, plaintiff performed electrical wiring, worked as a dishwasher and worked in agriculture, both with animals and crops.
3. On February 29, 2008, plaintiff commenced work for defendant-employer as a laborer, installing guttering on residential housing. Plaintiff's job involved changing gutters, which required going up and down ladders, bending to pick up materials, carrying lengths of *Page 4 
guttering up to 100 feet long, carrying ladders of lengths of 15 feet, 24 feet, 30 feet and 60 feet, and twisting to nail guttering. The heaviest item which plaintiff was required to carry was the 60-foot ladder, which he carried with four other workers.
4. On February 29, 2008, while performing his job duties, plaintiff fell from a ladder, injuring his back. Defendants accepted plaintiff's workers' compensation claim for his back injury as compensable on a Form 63, Notice to Employee of Payment of Benefits Without Prejudice. Following acceptance of the claim, defendants commenced payment of temporary total disability compensation under N.C. Gen. Stat. § 97-29, and provided medical compensation as required under N.C. Gen. Stat. § 97-25. As of the date of the hearing before the Deputy Commissioner, defendants continued to provide on-going temporary total disability benefits.
5. Following his accident, plaintiff presented to Prime Care, an urgent care facility. The parties were unable to obtain any medical records from this visit.
6. Three days after the accident, plaintiff presented to Dr. Ritchie, an orthopedic specialist, with x-rays obtained from Prime Care. Dr. John Edward Ritchie noted that the x-rays revealed possible compression fractures of the spine and recommended a CT scan, which was subsequently approved by defendants on March 7, 2008.
7. On March 10, 2008, plaintiff presented to Wake Forest University Baptist Medical Center, where, because of his level of pain, he was admitted overnight for evaluation. During his hospital stay, plaintiff was evaluated by Dr. John Peter Birkedal, an orthopedic specialist, who diagnosed plaintiff with compression fractures.
8. On March 31, 2008, plaintiff again presented to Dr. Birkedal, who more specifically diagnosed him with compression fractures at T12 and L1 and a possible disc *Page 5 
herniation at L5-S1. Dr. Birkedal recommended that plaintiff limit forward bending and avoid heavy lifting for four weeks.
9. On August 19, 2008, plaintiff presented to Dr. Jeffrey C. Beane, an orthopedic surgeon, who recommended an MRI of the lumbar spine and EMG/NVC studies to determine whether there was an injury to the sciatic nerve. The EMG/NVC studies were determined to be normal.
10. After review of the MRI, Dr. Beane diagnosed plaintiff with a herniated disc at L5-S1 and recommended that plaintiff try an epidural steroid injection, which provided little pain relief. Consequently, Dr. Beane recommended that plaintiff undergo a lumbar decompression, which was performed on October 2, 2008.
11. Plaintiff attended his first follow-up appointment with Dr. Beane on November 18, 2008. At this visit, Dr. Beane recommended a functional restoration program to assist plaintiff in preparing to return to work, which was subsequently commenced.
12. On January 21, 2008, Dr. Beane evaluated plaintiff and noted that plaintiff had a negative straight-leg raise test. Dr. Beane opined that the absence of any positive finding during the straight-leg raise test indicated that the nerve root was freed and was no longer irritated. Dr. Beane noted that plaintiff was progressing with work conditioning and recommended that plaintiff continue physical therapy.
13. As plaintiff's physical therapy progressed, he moved from traditional modalities of therapy to work-hardening type activities. These activities included pushing, pulling, lifting, carrying and climbing, and all were intended to simulate work activities.
14. In a February 17, 2009 progress report to Dr. Beane, the therapist reported that plaintiff could push and pull up to 200 pounds, could carry a box weighing 51 pounds the *Page 6 
distance of 300 feet, and could climb up and down at least 4 stairs with that box six times. The therapist also reported that plaintiff could lift the box from floor to overhead six times.
15. On February 18, 2009, after reviewing plaintiff's progress in work-conditioning and after speaking at length with plaintiff about his job duties and ways to use proper body mechanics to protect him from future injury, Dr. Beane released plaintiff to return to work, full duty without restrictions. Dr. Beane believed plaintiff could perform all the duties of his job based upon his discussion with plaintiff about the job, the reported progress of plaintiff's work conditioning, his examination of plaintiff, and his own personal experience of working as a roofer. During this appointment, Dr. Beane also opined that plaintiff was at maximum medical improvement, assessed him with a ten percent (10%) permanent partial impairment to his back, and released plaintiff from his care.
16. As a result of Dr. Beane's opinion that plaintiff could return to full-duty work, defendants filed a Form 24, Application to Terminate or Suspend Payment of Compensation on February 19, 2009.
17. Plaintiff filed an objection to the Form 24 application and also filed motions for a change of treating physician, removal of the rehabilitation nurse and removal of the interpreter, who had translated for plaintiff at his doctors' appointments. 18. On April 6, 2009, defendants' Form 24 application was disapproved by the Office of the Executive Secretary of the North Carolina Industrial Commission on the basis that Dr. Beane's office note released plaintiff to return to work "as described" at full duty, which the Commission determined to be insufficient to support a full-duty release with no restrictions.
19. On June 1, 2009, defendants filed a Form 33, Request That Claim Be Assigned for Hearing appealing the April 6, 2009 denial of their Form 24 application. *Page 7 
20. On July 9, 2009, the Office of the Executive Secretary denied plaintiff's Motion to Remove the Rehabilitation Professional as moot since the rehabilitation file was closed on February 20, 2009.
21. Defendants subsequently authorized a second opinion evaluation with Dr. Max William Cohen, an orthopedic surgeon with a specialty in the spine. On January 6, 2010, plaintiff presented to Dr. Cohen, who opined that plaintiff's physical examination was essentially normal and consistent with his injury and the surgical repair.
22. With regard to Dr. Beane's ten percent (10%) permanent partial disability rating, Dr. Cohen noted that Dr. Beane's rating did not appear to take into account plaintiff's compression fractures. Therefore, he included evaluation of those fractures when considering a rating and ultimately assessed plaintiff with a twenty-seven percent (27%) permanent partial impairment rating to the back.
23. The undersigned finds that Dr. Cohen's assessment of plaintiff's permanent partial impairment to his back of twenty-seven percent (27%) more fully rates plaintiff's impairment since it considers plaintiff's compression fractures, which were related to his compensable work injury.
24. Dr. Cohen did not have any independent recollection of speaking with plaintiff about his specific job duties and had no personal experience with the type of work plaintiff performed. Dr. Cohen did not assign plaintiff any work restrictions during his examination and did not express any opinions about specific restrictions he would assign. He simply opined that plaintiff was capable of some work.
25. At his deposition, Dr. Beane was questioned extensively on direct and cross regarding the meaning of his release returning plaintiff to work "as described at full duties." Dr. Beane *Page 8 
explained that at plaintiff's last appointment, they discussed plaintiff's return to work and Dr. Beane opined that plaintiff would be able to perform the lifting required, including lifting the ladders of 15, 24, and 30 feet and lifting the 60-foot ladder with the assistance of other workers, as he did prior to his February 29, 2008 injury. Dr. Beane indicated that "as described at full duties" meant that plaintiff was able to return to full-duty work, but was now encouraged to perform the same duties differently, using his legs and hips more instead of his back. Dr. Beane explained that the modification is in how plaintiff is to perform his duties instead of eliminating or limiting the job duties he can perform.
26. The Full Commission assigns greater weight to the medical opinions of Dr. Beane over those of Dr. Cohen regarding plaintiff's ability to return to work in his pre-injury position, as Dr. Beane has treated plaintiff since August 19, 2008, performed plaintiff's back surgery, provided post-surgical care and was familiar with the physical requirements of plaintiff's job duties from plaintiff's description as well as from personal experience.
27. Dr. Birkedal, who treated plaintiff early in this claim, provided no further treatment to plaintiff after March 31, 2008, and therefore declined to opine on plaintiff's current restrictions at his deposition on March 1, 2010.
28. The explanation provided by Dr. Beane at his March 11, 2010 deposition, which clarified plaintiff's release to full-duty, was not available to the Office of the Executive Secretary at the time of the April 6, 2009, Order denying defendants' Form 24 application.
29. Based on the totality of the evidence, and in particular, Dr. Beane's testimony, the Full Commission finds that plaintiff was capable of returning to full-duty work on February 19, 2009, pursuant to the release prepared by Dr. Beane. *Page 9 
30. Defendants assigned a nurse case manager, Cheryl Coates, to provide plaintiff with medical case management. Upon review of the case, Ms. Coates noted that plaintiff had required the assistance of an interpreter in prior medical appointments, and accordingly, recommended that defendants provide plaintiff with an interpreter at all medical appointments. Defendants subsequently provided an interpreter for plaintiff.
31. For most of plaintiff's treatment and therapy appointments, Mr. Javier Montoya with Optimal Translation served as plaintiff's translator. Mr. Montoya testified that he translated plaintiff's statements to the doctors and the doctors' statements to plaintiff verbatim.
32. Dr. Beane testified that he felt he was able to communicate appropriately with plaintiff through the interpreter. Dr. Beane explained that he utilized the interpreter as an adjunct to direct communication since he speaks some Spanish and relies upon pictures, diagrams, body language, and physical movements to communicate with non-English speaking patients.
33. At her deposition, Ms. Coates explained that she felt plaintiff was able to communicate information to his providers as well as understand the information being relayed to him through the interpreter. Dr. Cohen also testified that he was able to communicate with plaintiff without difficulty through the interpreter.
34. In response to the Form 24 Application, plaintiff also filed a motion to remove the nurse case manager on the basis that she and Mr. Javier Montoya had inappropriately discussed settlement of plaintiff's claim.
35. At her deposition, Ms. Coates denied ever asking plaintiff about the specifics of his workers' compensation case, including denying any inquiry about settlement amounts. Mr. Montoya also denied inquiring about the specifics of plaintiff's workers' compensation case, *Page 10 
either independently or at the request of Ms. Coates. At his deposition, Dr. Beane denied ever hearing plaintiff questioned about settlement of his case by either Ms. Coates or Mr. Montoya.
36. The Full Commission finds that there is insufficient evidence to find that Ms. Coates or Mr. Montoya acted inappropriately or in violation of any rule or statute.
37. As for plaintiff's employment status, following plaintiff's full-duty release, plaintiff did not return to work with defendant-employer.
38. At the hearing before the Deputy Commissioner, plaintiff testified that he was unaware of any jobs that he would be able to physically perform and had not undertaken any efforts to return to work with any other employer since his release to work by Dr. Beane on February 19, 2009.
39. The undersigned finds that Dr. Beane has provided professional and competent medical treatment of plaintiff and should remain plaintiff's treating physician.
40. As defendants provided the second opinion evaluation with Dr. Cohen, the issue of whether it was denied in bad faith is now moot.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Disability refers to the impairment of the injured employee's earning capacity because of the work injury. N.C. Gen. Stat. § 97-2(9) (2009); Peoples v. ConeMills Corp., 316 N.C. 426, 432, 342 S.E.2d 798, 804 (1986). Upon a full-duty release to return to work without restrictions, a claimant is no longer entitled to total disability benefits under N.C. Gen. Stat. § 97-29. Harrington v. Adams-RobinsonEnterprises, 349 N.C. 218, 504 S.E.2d 786 (1998). In light *Page 11 
of Dr. Beane's work release, which he explained at his deposition to be a full-duty release, plaintiff had no reduction in his wage earning capacity due to his injury, after February 18, 2009.
2. In addition, plaintiff failed to meet his burden of proof in establishing that he was still disabled or entitled to temporary total disability benefits following his full-duty release by Dr. Beane on February 18, 2009. A fundamental tenant of North Carolina workers' compensation law is that the employee has the burden of proving both the existence and extent of his disability. Clark v. Wal-Mart,360 N.C. 41, 43, 619 S.E. 2d 491, 493 (2005). A claimant can satisfy his burden of proof in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in obtaining employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. Russell v. Lowes Prod.Distribution,108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (internal citations omitted).
3. Plaintiff presented no evidence to prove disability under any of the four prongs of Russell. The evidence revealed that plaintiff received a full-duty work release, never participated in a job search following that release, undertook no effort to return to work with defendant-employer, who was willing to take him back, and never offered evidence to suggest that it would be futile for him to search for employment. Because plaintiff has not met his burden of proving disability, plaintiff is not entitled to on-going temporary total disability benefits after February 18, 2009.Id. *Page 12 
4. Plaintiff is entitled to compensation for the twenty-seven percent (27%) permanent partial impairment rating to his back, which equals 81 weeks of compensation under N.C. Gen. Stat. § 97-31. As plaintiff has been receiving temporary total disability compensation since February 18, 2009, the date he reached maximum medical improvement, defendants are entitled to a credit against the rating for all benefits paid since February 18, 2009. N.C. Gen. Stat. § 97-42; Effingham v. Kroger Co.,149 N.C. App. 105, 561 S.E.2d 287 (2002).
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 A W A R D
1. Plaintiff's claim for temporary total disability compensation following February 18, 2009 is hereby DENIED.
2. Plaintiff is entitled to benefits for the twenty-seven percent (27%) permanent partial impairment rating to his back, subject to a credit to defendants for temporary total disability benefits paid to plaintiff since February 18, 2009.
3. Plaintiff's attorney is awarded twenty-five percent (25%) of the amount due plaintiff under paragraph two.
4. Defendants shall pay the costs.
This the __ day of December 2010.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ LINDA CHEATHAM COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1