***********
The Full Commission has reviewed Deputy Commissioner Houser's Opinion and Award based upon the record of the proceedings and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the prior Opinion and Award. Accordingly, the Full Commission AFFIRMS, with modifications, the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. Plaintiff was an employee of Ronile, Inc., on or about 7 November 2006.
4. All parties are subject to the North Carolina Workers' Compensation Act.
5. Plaintiff's average weekly wage was $722.30, yielding a comp rate of $481.56.
6. The date of injury of plaintiff was 7 November 2006.
7. The compensable injury which is the subject of this claim is a right shoulder injury that was treated with three (3) surgeries: two surgeries performed by Dr. David Fedder of the Pinehurst Surgical Clinic, and one surgery performed by Dr. Kevin Speer in Raleigh, North Carolina.
8. Dr. Speer found plaintiff to be at maximum medical improvement on 26 March 2009, assigning a twenty percent (20%) permanent partial disability rating and recommending permanent work restrictions of no lifting greater than ten (10) pounds to shoulder and no overhead lifting.
9. Dr. William Isbell performed an independent medical examination on 13 November 2009, at which time he opined that plaintiff was at maximum medical improvement with a fifteen percent (15%) permanent partial disability rating to his right arm and restrictions of no lifting of greater than ten (10) pounds to the shoulder and no overhead lifting, and that plaintiff could operate a forklift.
10. After his final surgery, plaintiff was offered two (2) separate positions by Defendant-Employer, including a Forklift position and a Front Gate Attendant position, both of *Page 3 
which paid $9.71 per hour and would yield an average weekly wage of $388.40.
11. Dr. Kevin Speer approved the Front Gate Attendant job description for Plaintiff, but denied approval of the Forklift Operator position.
12. At the hearing, the parties submitted the following:
 a. Two Binders of Various Stipulated Exhibits, which were admitted into the record and marked as Stipulated Exhibits (1A) and (1B), and which included the following:
 i. A Pre-Trial Agreement;
 ii. Medical Records;
 iii. Discovery Responses;
 iv. A Personnel File;
 v. Industrial Commission Forms, and;
 vi. Miscellaneous Documents.
13. Also made part of the record is the deposition of Mr. David Frick.
 *********** ISSUES
1. Whether the Front Gate Attendant position offered to Plaintiff by Defendant-Employer was "suitable" employment as defined by N.C. Gen. Stat. § 97-32 and the applicable case law.
2. Whether the Forklift Operator position offered to Plaintiff by Defendant-Employer was "suitable" employment as defined by N.C. Gen. Stat. § 97-32 and the applicable case law.
 *********** *Page 4 
Given the foregoing stipulations, and based upon the preponderance of the evidence in view of the entire record, the Full Commission enters the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, Plaintiff was sixty-four (64) years of age. Plaintiff's date of birth is 23 July 1946. Plaintiff is a high school graduate and has taken college courses in heating, air-conditioning, and plumbing. Plaintiff has held licenses in plumbing and life insurance.
2. Plaintiff's employment history includes working as a plumber's helper, selling life insurance, and self-employment for a period of time as a maintenance contractor. Additionally, Plaintiff served in the United States Army in Vietnam from 1966 to 1968.
3. Plaintiff has worked for Defendant-Employer for various periods of time commencing on 27 January 1965. Plaintiff initially worked as a Floorman, then as Shipping Clerk before voluntarily leaving Defendant-Employer on 20 March 1970. Plaintiff returned to defendant-employer in 1978 in its Tufting Department where he worked in a Set Up position, as Loop Pile Operator, as a Cut Pile Operator and as a Fixer until 1989. Plaintiff returned to Defendant-Employer in 1996, again to the Tufting Department where he worked as a Tufting Fixer, Tufting Tech II, Tufting Tech III and ultimately as a Tufting Tech IV.
4. On 7 November 2006, Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with Defendant-Employer involving his right shoulder.
5. Defendants accepted the compensability of Plaintiff's right shoulder injury pursuant to the filing of an Industrial Commission Form 60.
6. Following his injury, Plaintiff initially sought medical treatment at an Urgent Care *Page 5 
facility, where he was referred to Dr. David Fedder at Pinehurst Surgical Clinic. Dr. Fedder initially diagnosed Plaintiff as having sustained a right shoulder sprain, for which he provided conservative treatment. Although plaintiff experienced some improvement, he continued to experience a dull aching pain and discomfort with elevation and rotation of his right arm after one month. Dr. Fedder then ordered an MRI, the results of which revealed a full thickness tear at the insertion of the supraspinatus tendon in Plaintiff's right shoulder.
7. Thereafter on 21 December 2006, Plaintiff underwent a right shoulder rotator cuff repair, acromioplasty, coracoacromial ligament release and a subacromial decompression procedure that was performed by Dr. Fedder.
8. Post-operatively, Plaintiff underwent two months of physical therapy, after which he continued experiencing persistent right shoulder pain. Dr. Fedder then diagnosed Plaintiff as having a recurrent rotator cuff tear, for which he performed a second surgical procedure on 13 April 2007.
9. Following his second surgery, Plaintiff's condition initially improved and on 11 June 2007, he was released to return to light-duty work with no overhead lifting. On 13 August 2007, plaintiff was released to full-duty work.
10. On 17 June 2008, Plaintiff returned to Dr. Fedder and reported having experienced radiating right arm pain during the prior few weeks. Following diagnostic studies, Dr. Fedder found that Plaintiff had a full thickness tearing of the subscapularis tendon, and referred him to Dr. Kevin Speer.
11. Plaintiff was first examined by Dr. Speer on 26 August 2008. Dr. Speer recommended that plaintiff undergo a third right shoulder surgery consisting of a subacromial decompression, a subscapularis tendon debridement, and a biceps tenotomy. This procedure was *Page 6 
performed on 19 September 2008.
12. On 26 March 2009, Dr. Speer opined that Plaintiff had reached maximum medical improvement, assigned a twenty percent (20%) permanent partial disability rating to his right shoulder, and work restrictions of no lifting more than ten (10) pounds and no repetitive overhead activity. Additionally, Dr. Speer recommended that Plaintiff consult with a vocational rehabilitation specialist. Later, Dr. Speer clarified that his assigned rating was twenty-five percent (25%).
13. On 10 June 2009, Dr. Speer reviewed a job description for a Lift Truck Operator position had been offered to Plaintiff. Based upon Plaintiff's description of the duties of the Lift Truck Operator position, Dr. Speer would not approve the job.
14. On November 13, 2009, Plaintiff was seen for an independent medical examination by Dr. William Isbell. Dr. Isbell reviewed the Lift Truck Operator job description and was of the opinion that the position would be suitable for Plaintiff as, according to the description, it did not involve lifting over ten (10) pounds or overhead lifting. Dr. Isbell was of the opinion that Plaintiff had reached maximum medical improvement and that he retains a fifteen percent (15%) permanent partial disability rating.
15. There was contradictory testimony regarding the physical requirements of the Lift Truck Operator position. Plaintiff testified that the job required occasional lifting of 25 to 30 pounds and pulling tubes off the pole of the lift truck, and that he told Dr. Speer this when Dr. Speer was reviewing the job description. Ms. Mallory Ransom, Defendant-Employer's Human Resource Manager, testified that the only lifting involved in the Lift Truck Operator position was the occasional removal of cardboard tubes weighing less than 10 pounds.
16. The Full Commission finds Plaintiff's testimony regarding the occasional lifting *Page 7 
in the Lift Truck Operator position credible. Accordingly, this position was not suitable to Plaintiff's physical restrictions and Plaintiff's refusal of the position was justified.
17. On October 14, 2010, the nurse case manager assigned to this claim wrote a letter to Dr. Speer, asking him to review a job description for a Front Gate Attendant position. On October 22, 2010, Dr. Speer opined that Plaintiff was capable of performing the Front Gate Attendant Position.
18. Defendant-Employer's Aberdeen, North Carolina facility is a fenced campus with two exits referred to as the front and back gates. Both the front and the back gate have permanent gatehouses. The back gate is used for shipping and receiving and is constantly attended, 24 hours a day/7 days a week. The front gate is used as the entrance for employees, visitors, and vendors. Between July 2008 and February 2010, Defendant-Employer did not staff the Front Gate Attendant position in an effort to cut expenses due to a severe decline in sales. This was done in conjunction with a twenty percent reduction in the overall workforce at the plant. When sales improved and employees were called back, Defendant-Employer was in a position to staff the Front Gate Attendant position and determined that it would be economically advantageous to offer the position to Plaintiff.
19. By letter dated November 11, 2009, Defendant-Employer offered the Front Gate Attendant position to Plaintiff and asked that he report to work on November 23, 2009.
20. The rate of pay for the Front Gate Attendant position was $9.71 per hour, or $388.40 per week.
21. Even though the physical requirements of the Front Gate Attendant position were well within Plaintiff's restrictions, Plaintiff did not accept the job because he thought the rate of pay was too low. *Page 8 
22. Had Plaintiff accepted the Front Gate Attendant position, it would have offered him the possibility of advancement to other positions within the company because Defendant-Employer fills its vacant positions by offering them first to current employees. Ms. Ransom identified the Lift Truck Operator position and the Carpet Inspector position as ones which would be within Plaintiff's permanent work restrictions. The top rate of pay for a Carpet Inspector is $11.86 per hour, while that for a Lift Truck Operator is $9.71 per hour. However, the Lift Truck Operator position would offer the opportunity for the employee to earn 8 to 10 hours of overtime per week.
23. Mr. David Frick, a vocational case manager with CorVel, indicated that the Front Gate Attendant position was not suitable for Plaintiff because of the wage differential and the lack of opportunity for advancement in the position.
24. Defendants did not offer any vocational evidence to support their position that the Front Gate Attendant position was suitable for Plaintiff despite the vast wage differential. Moreover, there is no evidence of record regarding the availability of similar positions in Plaintiff's local labor market and the likelihood that other employers would hire Plaintiff to perform these jobs.
25. While the wage differential is only one factor to consider in determining whether a job offered to an employee is suitable, in the absence of any contrary vocational evidence and without any basis to find that other employers would hire Plaintiff to perform a Front Gate Attendant position, the undersigned are unable to find that the Front Gate Attendant position that was offered to Plaintiff in November 2009 was suitable employment or that Plaintiff was unjustified in refusing the position.
26. As of the date of the hearing before Deputy Commissioner Houser, Plaintiff had *Page 9 
made reasonable effort to find other employment within his restrictions but had not been successful.
27. Plaintiff remains unable to earn the same wages he was earning at the time of the November 7, 2006 injury in the same or any other employment.
 ***********
The foregoing Stipulations and Findings of Fact engender the following:
 CONCLUSIONS OF LAW
1. On November 7, 2006, Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with Defendant-Employer involving his right shoulder. N.C. Gen. Stat. § 97-2(6).
2. An injured employee who unjustifiably refuses employment procured for him suitable to his capacity is not entitled to compensation for disability during the continuance of his refusal. N.C. Gen. Stat. § 97-32.
3. Pursuant to the provisions of the Workers' Compensation Act in effect on the day of Plaintiff's injury, "suitability" under N.C. Gen. Stat. § 97-32 is not limited to a consideration of physical suitability. The courts of this State have held that the Commission must consider the similarity of the employee's pre-injury wages and the wages of the proffered job, as well as the opportunity for advancement. Dixon v. City of Durham,128 N.C. App. 501, 495 S.E.2d 380 (1998). As recently as August 2, 2011 the North Carolina Court of Appeals stated, in ruling on the suitability of a light duty CNA position, that "defendants have not cited any decision of the Supreme Court or this Court holding that a proffered job was `suitable' in the face of a nearly 40% reduction in the claimant's rate of compensation, and we know of none." See Wynn v. United HealthServices, ___ N.C. App ___, ___ S.E.2d ___ (2011). Therefore, because the Front *Page 10 
Gate Attendant position would have paid Plaintiff more than 45 percent less than what he was earning at the time of the injury, and in the absence of any vocational evidence contradicting that of Mr. Frick, the Commission is compelled to conclude that the Front Gate Attendant position was not suitable for Plaintiff.
4. Defendants contend that regardless of whether the position was suitable, the fact that it was offered to Plaintiff and was within his physical capabilities is evidence of some wage earning capacity, thereby defeating his claim for total disability benefits. However, it is well-settled that
 If the proffered employment does not accurately reflect the person's ability to compete with others for wages, it cannot be considered evidence of earning capacity. Proffered employment would not accurately reflect earning capacity if other employers would not hire the employee with the employee's limitations at a comparable wage level.
Peoples v. Cone Mills Corp.,316 N.C. 426, 438, 342 S.E.2d 798, 806 (1986). See, also,Effingham v. The Kroger Company,149 N.C. App. 105, 561 S.E.2d 287 (2002). The rationale is that "if an employee has no ability to earn wages competitively, the employee will be left with no income should the employee's job be terminated." Saums v. Raleigh Community Hospital,346 N.C. 760, 764-5, 487 S.E.2d 746, 750 (1997), quotingPeoples, 316 N.C. at 438, 342 S.E.2d at 806. In the absence of any evidence of record that other employers would hire Plaintiff to do a similar job at a comparable wage, the Commission cannot find or conclude that the proffer of the Front Gate Attendant position established that Plaintiff has wage earning capacity.
5. Defendants accepted Plaintiff's right shoulder injury on a Form 60, which does not create a presumption of disability for Plaintiff. Therefore, the burden of proving continuing disability remains with Plaintiff. Sims v. Charmes/Arby's Roast Beef,142 N.C. App. 154, 542 S.E.2d 277 (2001). *Page 11 
6. A claimant can prove disability in one of four ways: (1) by production of medical evidence that he is physically or mentally, as a consequence of the work-related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but after reasonable effort has been unsuccessful in his efforts to obtain employment; (3) the production of evidence that he is capable of some work, but that it would be futile to seek other employment because of preexisting conditions such as age, lack of education, etc.; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. Russell v. Lowes Prod. Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993). Plaintiff has proven disability under the second prong of Russell, and therefore is entitled to ongoing benefits under N.C. Gen. Stat. § 97-29 until such time as he returns to work or further Order of the Commission.
 ***********
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall continue to pay Plaintiff ongoing total disability benefits at the rate of $481.56 per week until such time as he returns to work or further Order of the Industrial Commission. This compensation is subject to the attorney's fee approved herein.
2. A reasonable attorney's fee of twenty-five percent of the compensation awarded herein is approved for Plaintiff's counsel and shall be paid by forwarding every fourth compensation check directly to Plaintiff's counsel.
3. Defendants shall pay the costs.
This the ____ day of October, 2011. *Page 12 
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/___________________ LINDA CHEATHAM COMMISSIONER
 S/___________________ TAMMY R. NANCE COMMISSIONER *Page 1