***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gillen, and the briefs and arguments of the parties. The appealing party has shown good grounds to reconsider the evidence. Having reviewed the competent evidence of record, the Full Commission reverses the Opinion and Award of Deputy Commissioner Gillen.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties as:
 STIPULATIONS
1. On or about January 17, 2009, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. ACE USA, Inc. was the carrier *Page 2 
for Defendant-Employer at the time of injury. All parties have been correctly designated, there is no question as to the misjoinder of the parties, and the parties are subject to the jurisdiction of the North Carolina Industrial Commission.
2. On January 17, 2009, Plaintiff was employed with Defendant-Employer as a CNA when she sustained a compensable injury by accident to her low back while moving a patient.
3. Plaintiff's average weekly wage was determined by an Industrial Commission Form 22, Statement of Days Worked and Earnings of InjuredEmployee, dated June 23, 2009. Plaintiff's average weekly wage calculated on the Form 22 is $258.80.
4. Defendants filed an Industrial Commission Form 63, Notice ToEmployee of Payment of Compensation Without Prejudice or Payment ofMedical Benefits Without Prejudice, dated June 16, 2009.
5. Plaintiff filed an Industrial Commission Form 33, RequestThat Claim Be Assigned for Hearing, dated November 24, 2009. Defendants filed an Industrial Commission Form 33R, Response toRequest That Claim Be Assigned for Hearing, dated January 4, 2010.
 ***********
The following were entered into evidence as:
 STIPULATED EXHIBITS a. The Pretrial Agreement, marked as Stipulated Exhibit 1;
 b. A collection of documents, including the Industrial Commission Forms filed in this matter, Plaintiff's medical records, and discovery information, collectively paginated 1-404 and marked as Stipulated Exhibit 2;
 c. Additional medical records, collectively paginated 1-151 and marked as Stipulated Exhibit 3; and *Page 3 
 d. A record of Defendant-Employer's terminations, collectively paginated 1-4 and marked as Stipulated Exhibit 5.
 ***********
The following were entered into evidence as:
 EXHIBITS a. 54 pages of personnel records, marked as Defendants' Exhibit 1;
 b. 30 pages of additional documents marked as Defendants' Exhibit 2; and
 c. Subsequent to the hearing, three pages of Plaintiff's job search information marked as Plaintiff's Exhibit 1.
 *********** ISSUE PRESENTED
To what workers' compensation benefits and/or medical treatment is Plaintiff entitled as a result of the January 17, 2009 accident?
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 32 years of age with a date of birth of September 7, 1978. Plaintiff dropped out of school in the ninth grade, but later obtained a GED. On October 8, 2007, Plaintiff began working for Defendant-Employer as a certified nursing assistant (CNA), for which Plaintiff's tasks included moving patients. Plaintiff worked the "weekend warrior" shift for which Plaintiff worked a 12-hour shift on Saturday, a 12-hour shift on Sunday, and an 8-hour *Page 4 
shift on a weekday. If an employee working the "weekend warrior" shift left early or arrived late, then he or she would lose their scheduled bonus pay of an extra $4.00 per hour.
2. As part of her employment orientation with Defendant-Employer, Plaintiff was informed of Defendant-Employer's attendance policy. Defendant-Employer's attendance policy tracked an employee's absences and tardiness and assigned occurrences to his or her attendance record for each absence, tardy, or early-departure over a 12-month period. Each unscheduled absence equates to one occurrence. An employee also receives an occurrence for every three tardies or early-departures before the end of a work period. Under the attendance policy, employees are issued up to three written warnings and receive verbal counseling as the unscheduled occurrences accrue. Once an employee has seven unscheduled occurrences over a 12-month period, the employee is terminated for violating the attendance policy.
3. On January 17, 2009, a fire sprinkler malfunction occurred in Defendant-Employer's facility, causing water to spray onto the patients. As a result, the patients needed to be moved. As Plaintiff was moving a patient's bed, the bed became stuck in a doorway. As Plaintiff was attempting to manipulate the bed, she slipped in water that was on the floor and fell onto her left lower back. Plaintiff informed multiple people about this incident within 15 minutes of its happening, including Plaintiff's shift supervisor.
4. Plaintiff sought treatment at Lake Norman Urgent Care on January 17, 2009. The medical records from this visit document that Plaintiff fell at work and was suffering "mid Lt Back pain" and was diagnosed with a lumbar strain. Plaintiff was also assigned light duty work restrictions for five days of no lifting over 15 pounds, limited bending, twisting, and walking, and no stooping or squatting. Following the accident, Plaintiff returned to work for Defendant-Employer at light duty earning her pre-injury wages. *Page 5 
5. On January 22, 2009, Plaintiff was seen by Dr. Fredirck Vorwald with Lake Norman Family Medicine with complaints of continued burning sensation in low back from the January 17, 2009 work injury. Dr. Vorwald noted that Plaintiff had been following "light desk duty" restrictions. Dr. Vorwald diagnosed Plaintiff with low back pain, continued medications, and recommended heat, stretching, physical therapy, and light desk duty for one week.
6. On February 5, 2009, Plaintiff reported to Dr. Vorwald with persistent low back pain, with intermittent paresthesias of the left foot. Dr. Vorwald continued physical therapy and ordered an MRI of "L-S Spine." Plaintiff was continued on light desk duty restrictions for one week. Plaintiff's restrictions were again continued on February 12, 2009.
7. On February 20, 2009, an MRI was taken of Plaintiff's low back. On the report generated by this test Dr. Richard Dunlap diagnosed Plaintiff with, among other things, multilevel degenerative disc disease and spondylosis, concentric disc bulge with central annulus tear at L5-S1, and small perineural meningeal cyst within the sacral canal at the level of S2. Dr. Vorwald continued Plaintiff's light duty restrictions for seven days.
8. On February 27, 2009, Dr. Vorwald noted Plaintiff's complaints of persistent low back pain and that Plaintiff had been following "light desk duty work restrictions," which were continued for an additional two weeks.
9. On March 3, 2009, Dr. Vorwald completed an out of work note for February 28, 2009, through March 3, 2009.
10. On March 16, 2009, Plaintiff presented to Mr. Michael Long, PA-C, with OrthoCarolina. Mr. Long noted that Plaintiff had received improvement from physical therapy but still had ongoing low back pain and left buttock pain with occasional pain into the left posterior leg. Plaintiff rated her pain a four on a scale of one to 10. Mr. Long assessed Plaintiff *Page 6 
with a workers' compensation injury with pain generated from the annular tear at L5-S1 and left sacroiliitis. Mr. Long continued Plaintiff's physical therapy and light duty restrictions of no lifting more than 15 pounds, no prolonged bending, stooping, squatting, kneeling, or twisting, no working on or driving power moving equipment, and no ladder or stair-climbing.
11. On March 23, 2009, Plaintiff presented to Dr. Alexander Chasnis, with Lake Norman Regional Medical Center, and received bilateral S1 transforaminal epidural injections. Dr. Chasnis diagnosed Plaintiff with low back pain, L5-S1 degenerative disc disease, L5-S1 disc bulge, and bilateral lower extremity pain with questionable radiculopathy. Plaintiff underwent further injections on April 6, 2009.
12. On April 8, 2009, Plaintiff was treated at Lake Norman Regional Medical Center for injuries from a motor vehicle accident in which she was rear-ended in a stationary vehicle. Plaintiff returned to Lake Norman Regional Medical Center on April 11, 2009, with a chief complaint of injury from a motor vehicle accident. Plaintiff complained of increasing pain since the motor vehicle accident on April 8, 2011. Plaintiff complained of right-sided pain from shoulders to leg. Plaintiff was taken out of work for two days and given light duty restriction for three to five days.
13. On April 21, 2009, Plaintiff returned to Mr. Long with OrthoCarolina complaining of increased pain in low back and legs. Plaintiff complained of pain going down the front and back of both legs and numbness and tingling in her toes and both feet. Plaintiff rated her pain a six on a scale of one to 10 which was constant, burning, aching, stinging, dull, and throbbing. Mr. Long noted that Plaintiff was working light duty. Mr. Long assessed Plaintiff with preexisting multilevel degenerative disk disease and spondylosis with an annular tear at L5-S1. Mr. Long continued Plaintiff's physical therapy and light duty restrictions of no *Page 7 
lifting more than 15 pounds, no prolonged bending, stooping, squatting, kneeling, or twisting, no working on or driving power moving equipment, and no ladder or stair-climbing.
14. On May 4, 2009, Plaintiff received another MRI which was a normal study showing age-appropriate disk degeneration at L5-S1. The MRI showed a small annular tear at L5-S1. However, Dr. Alden Milam believed the annular tear to be asymptomatic given Plaintiff's response to S1 nerve root blocks, which made her symptoms worse.
15. On May 7, 2009, Dr. Milam noted that he suspected Plaintiff had musculoskeletal back pain with a lumbar strain, which would take several months to heal. Dr. Milam noted that he would see Plaintiff back in one month at which time he anticipated that Plaintiff would be at maximum medical improvement (MMI) with a zero percent permanent partial impairment (PPI) rating. Dr. Milam modified Plaintiff's work restrictions effective May 8, 2009 as no lifting more than 30 pounds, no prolonged bending, stooping, squatting, kneeling, or twisting, and no pushing or pulling more than 60 pounds.
16. On June 11, 2009, Plaintiff presented to Dr. Milam with complaints of low back pain, mostly on the left side and numbness and tingling in both feet and toes. Plaintiff reported that she had been doing physical therapy at home, swimming, and using the elliptical at the YMCA. Plaintiff noted significant improvement in her symptoms. Dr. Milam again reviewed the May 4, 2009 MRI of Plaintiff's lumbar spine, which was a normal study. Dr. Milam noted that it is unlikely that Plaintiff has an annular tear as previously thought at L5-S1, but if she did, it "certainly is not symptomatic." Dr. Milam again reassured Plaintiff that her back pain was musculoskeletal with a lumbar strain and that there were no structural underlying abnormalities of her spine. Dr. Milam noted that Plaintiff did not have a disk herniation or nerve compression. Dr. Milam again noted that Plaintiff only had appropriate mild disk desiccation at L5-S1 and a *Page 8 
questionable annular tear. Dr. Milam encouraged Plaintiff to be active. Plaintiff's work restrictions were modified to working full duty for four hours per day, with the remaining part of the day under restrictions of no lifting more than 30 pounds and no pushing or pulling more than 60 pounds.
17. Defendants filed an Industrial Commission Form 63 dated June 16, 2009 on which Defendants paid Plaintiff's medical expenses without prejudice.
18. On July 16, 2009, Plaintiff presented to Dr. Milam with complaints of back pain. Dr. Milam noted again that the May 4, 2009 MRI was normal. Dr. Milam noted that Plaintiff did not have a disk herniation or nerve compression or any other findings to suggest what would be the source of Plaintiff's pain. Dr. Milam also noted that it was not uncommon to experience a worsening of pain with increased work with a lumbar strain and that Plaintiff was not damaging her spine by pushing through the pain. Dr. Milam encouraged Plaintiff to continue physical therapy at home and gave Plaintiff a refill for her pain medication for the last time. Dr. Milam further noted that while Plaintiff is experiencing pain, there is no structural abnormality with the spine. Dr. Milam released Plaintiff at MMI without work restrictions and assigned a zero percent PPI rating to Plaintiff's spine.
19. On August 1, 2009, Plaintiff presented to Lake Norman Regional Medical Center with a chief complaint of shoulder pain with no known injury. The medical records from this date indicate that Plaintiff was involved in a motor vehicle accident on April 11, 2009 and still complains of pain to her right shoulder and upper back. The August 1, 2009 note indicates that Plaintiff is able to ambulate independently and can perform all activities of daily living without assistance. Plaintiff complained of recurring middle right back pain radiating to her shoulder after the motor vehicle accident in April which is getting progressively worse. Plaintiff was *Page 9 
diagnosed with thoracic strain.
20. On September 1, 2009, Plaintiff saw Dr. Maher Habashi for a second opinion. After evaluating Plaintiff, Dr. Habashi's impression was that Plaintiff had a sprained lumbar spine with annular tear at L5-S1 and compression of S1, degenerative arthritis of the lumbar spine rendered symptomatic by injury, and left-sided lumbar radiculitis. Dr. Habashi noted that Plaintiff had reached MMI and had a 10% PPI rating to her back. He also gave Plaintiff work restrictions of no lifting over 30 pounds and no heavy pushing or pulling. Dr. Habashi noted that Plaintiff had treated conservatively with improvement, and under the "Future Medical" section of his report, Dr. Habashi noted that Plaintiff would only need over-the-counter pain medications.
21. On September 30, 2009, Plaintiff returned to Dr. Milam with complaints of low back pain with some radiation into the left posterior thigh. Dr. Milam noted that Plaintiff should continue working at full duty.
22. On November 9, 2009, Plaintiff was terminated from her employment with Defendant-Employer for violating the attendance policy. During the period of time between 2008 and 2010, Defendant-Employer terminated six other employees for violating the attendance policy. Teresa Wright, the Human Resource Coordinator for Defendant-Employer, testified that out of the other employees terminated for violating the attendance policy, none of the employees had a workers' compensation claim.
23. In the year preceding her termination for violation of the attendance policy, Plaintiff received her first two occurrences on November 29, 2008 and November 30, 2008, when Plaintiff missed work for reasons unrelated to her workers' compensation claim. On December 9, 2008 and May 11, 2009, Plaintiff was tardy and left early on December 14, 2008, *Page 10 
for reasons unrelated to her workers' compensation claim. Plaintiff called out of work again on April 11, 2009 and April 12, 2009 for reasons unrelated to her workers' compensation claim. Plaintiff received her final written warning for violating the attendance policy following her unscheduled absences on August 2, 2009 and August 4, 2009 unrelated to her workers' compensation claim. Plaintiff incurred her seventh occurrence as a result of leaving work early on September 22, 2009 and November 1, 2009, and being tardy on October 6, 2009, for reasons unrelated to her workers' compensation claim. As a result of the seventh occurrence, Plaintiff was terminated effective November 3, 2009, for reasons unrelated to her compensable workers' compensation injury.
24. On March 16, 2010, Plaintiff presented to Lake Norman Regional Medical Center with complaints of right-sided low back pain and migraine headaches. Plaintiff did not mention a work injury. According to the medical records, Plaintiff indicated that she may have worked out too hard on Saturday and now has right sided back pain that radiates down her right leg. Plaintiff denied having numbness or tingling in her extremities.
25. Dr. Milam opined to a reasonable degree of medical certainty that Plaintiff's left-sided back pain and buttock pain were caused by Plaintiff's January 17, 2009 workplace accident. Dr. Milam also opined that Plaintiff would not need ongoing medical treatment for her work injury and that Plaintiff should maintain activity, engage in core strengthening of abdominals and lumbar spine, and physical therapy at home. Dr. Milam indicated that Plaintiff's issue was musculoskeletal and that the more active Plaintiff was, the more likely her pain would go away.
26. During Plaintiff's treatment with Dr. Milam, Plaintiff never mentioned the April 2009 motor vehicle accident or the treatment she received as a result of the accident. *Page 11 
27. The Full Commission gives greater weight to the testimony and opinions of Dr. Milam than of Dr. Habashi.
28. Although Plaintiff is entitled to a second opinion with regard to her PPI rating by Dr. Habashi pursuant to N.C. Gen. Stat. § 97-27(b), the Full Commission gives greater weight to the opinion regarding Plaintiff's rating by Dr. Milam of zero percent to her spine. Therefore, the Full Commission finds that Plaintiff does not suffer from a permanent partial disability to her spine as a result of her compensable injury.
29. The greater weight of the evidence establishes that the medical treatment Plaintiff received following the January 17, 2009 accident was reasonable and medically necessary, and was reasonably calculated to affect a cure and give relief from Plaintiff's January 17, 2009 injuries. However, the Full Commission finds based upon the greater weight of the evidence that there is insufficient medical evidence to show that Plaintiff requires any additional medical treatment for her compensable work injury after her release at MMI on July 16, 2009.
30. Plaintiff has received unemployment benefits in the amount of $196.00 per week beginning in January 2010.
31. The parties stipulated that Plaintiff's average weekly wage was $258.80. This average weekly wage yields a workers' compensation rate of $172.54.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 12 
1. On January 17, 2009, while working for Defendant-Employer, Plaintiff suffered a compensable injury by accident when she slipped and fell, injuring her low back. N.C. Gen. Stat. § 97-2(6).
2. In order to qualify for compensation under the Workers' Compensation Act, a claimant must prove both the existence and the extent of disability. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982).
3. On November 4, 2009, Plaintiff was terminated for violating the attendance policy, unrelated to her compensable injury, for which a non-disabled employee would ordinarily have been terminated by Defendant-Employer. Seagraves v. Austin Co. of Greensboro,123 N.C. App. 228, 472 S.E. 2d 397 (1996). Accordingly, Plaintiff's termination constituted a constructive refusal of suitable employment. N.C. Gen. Stat. § 97-32.
4. Under the Seagraves analysis, after an employer has proven that the employee's termination constitutes a constructive refusal of suitable employment, an employee must then show that her inability to find other employment at wages comparable to those earned prior to the injury is due to the work-related disability. Seagraves,123 N.C. App. 228, 472 S.E. 2d 397 (1996).
5. In the present case, Plaintiff did not meet her burden to prove that after her termination on November 4, 2009, she was incapable of finding work because of her work-related injury. Plaintiff did not show that due to her compensable injury, she was unable to earn wages, unable to obtain employment after a reasonable effort, or that it was futile for her to seek employment because of other factors. Demery v. PerdueFarms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v.Lowes Product Distrib., 108 N.C. App. 762, 425 S.E.2d 454 (1993). *Page 13 
Therefore, Plaintiff failed to prove that she is entitled to temporary total disability benefits. N.C. Gen. Stat. § 97-29.
6. As Plaintiff has reached MMI, a determination of any permanent partial disability is proper at this time. Effingham v. KrogerCo., 149 N.C. App. 105, 561 S.E.2d 287 (2002). Although Plaintiff is entitled to a second opinion with regard to her PPI rating by Dr. Habashi pursuant to N.C. Gen. Stat. § 97-27(b), the Full Commission gives greater weight to the opinion regarding Plaintiff's rating by Dr. Milam of zero percent to her spine. Therefore, the Full Commission finds that Plaintiff does not suffer from a permanent partial disability. N.C. Gen. Stat. § 97-31. As such, Plaintiff is not entitled to permanent partial disability benefits. Id.
7. Plaintiff is not entitled to additional medical treatment for her compensable work injury after her release at MMI on July 16, 2009. N.C. Gen. Stat. § 97-25.
8. Pursuant to N.C. Gen. Stat. § 97-42.1, Defendants are entitled to a credit for unemployment benefits Plaintiff received subsequent to the January 17, 2009 injury against any disability benefits which may be awarded to Plaintiff in the future.
 ***********
Based upon the foregoing Findings of Facts and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for temporary total disability benefits and permanent partial disability benefits is denied.
2. Plaintiff is not entitled to further medical treatment for her compensable left-sided low back injury following her release at MMI on July 16, 2009.
3. Each side shall bear its own costs. *Page 14 
This the 16th day of June, 2011.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
DISSENTING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER *Page 15